UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHYNNA S.,[1]

           Plaintiff

      v.

LELAND DUDEK, Acting Commissioner of Social Security,

         Defendant.

Case No. 5:24-cv-01127-GJS

**MEMORANDUM OPINION AND ORDER**

## I.    PROCEDURAL HISTORY

Plaintiff filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI").  Defendant filed an answer [Dkt. 8] and lodged the administrative record [Dkts. 8-1 through 8-18, "AR"].  The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 7 and 17] and briefs [Dkts. 9, 15, and 16] addressing disputed issues in the case.

///

///

///

---

[1]    In the interest of privacy, this Order uses only the first name and the first initial of the last name of the non-governmental party.

## II.   THE ADMINISTRATIVE DECISION UNDER REVIEW

This case follows a remand ordered by this Court on December 16, 2022, pursuant to the parties' stipulation.  [AR 776-79.]  On May 17, 2023, the Appeals Council directed the Administrative Law Judge ("ALJ") to properly evaluate the medical opinion evidence provided by David L. Biscardi, Ph.D and Plaintiff's alleged symptoms and, if warranted, to obtain evidence from a vocational expert. [AR 782-84.]

On February 27, 2024, the ALJ held a hearing at which Plaintiff and a vocational expert testified.  [AR 762-72.]  At the hearing, through counsel, Plaintiff amended her disability onset date from September 9, 2009, to May 5, 2020.  [AR 745, 766.]  On April 3, 2024, the ALJ issued another decision that was unfavorable to Plaintiff.  [AR 745-55, the "Decision."]  The Decision applied the five-step sequential evaluation process for assessing disability (*see* 20 C.F.R. § 404.920).  At steps one through three, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 5, 2020, the alleged onset date, and had the severe impairments of major depressive disorder, obsessive compulsive disorder, borderline personality disorder, and anxiety disorder, but did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations (*see* 20 C.F.R. Pt. 404, Subpt. P, App. 1).  [AR 747-49.]  At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform " a full range of work at all exertional levels but with the following nonexertional limitations":

> [I]s able to understand, remember, and carry out simple, routine work tasks, but not at a production rate pace, for example, no assembly line jobs; may tolerate occasional workplace changes; may have occasional interaction with coworkers and supervisors, but no teamwork tasks; and may have no contact with the public.

[AR 749-53.]  The ALJ further determined that Plaintiff had no past relevant work. [AR 754.]  At step five, the ALJ determined that Plaintiff could perform other work

that exists in significant numbers in the national economy, including the representative occupations of floor waxer, cleaner II, and wall cleaner.  [AR 754-55.]  Therefore, the ALJ concluded that Plaintiff was not under a disability from the alleged onset date through the date of the decision.  [AR 755.]

## III.  THE ISSUES RAISED

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

1.    Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's allegations of mental dysfunction.  [Dkt. 9 at 2 - 17.]

2.    Whether the ALJ erred in failing to evaluate the treating medical source opinions of Plaintiff's psychiatrist Brauer Trammel, M.D.  [Dkt. 9 at, 17-21.]

3.    Whether the ALJ provided a valid explanation supported by substantial evidence for rejecting the mental work restrictions assessed by the State agency psychologist, David Biscardi, Ph.D.  [Dkt. 9 at 2, 21-25.]

The Commissioner asserts that Plaintiff has failed to demonstrate that the ALJ committed harmful legal error and that the ALJ's decision is supported by substantial evidence and should be affirmed.  [Dkt. 15 at 2, 3-17.]

## IV.  THE GOVERNING STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Decision to determine if:  (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008).  "Substantial evidence … is 'more than a mere scintilla' … [i]t means – and means only – 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted*); see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) ("Substantial evidence is more than a mere scintilla but less than a preponderance.") (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "'the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). However, the Court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or that, despite the error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## V.   DISCUSSION

### A.   Issue One: Plaintiff's Subjective Symptoms

The first issue raised involves the ALJ's rejection of Plaintiff's statements and testimony about the effects of her mental health impairments on her ability to work. The ALJ found that: (1) Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual" [AR 750-51]; (2) Plaintiff's "treatment and medications have been generally successful in controlling [her] symptoms because there has been very little change in her medication treatment at the request of the claimant and she has consistently refused additional services, assistance, or treatment modalities even as recommended by her treatment providers" [AR 751]; and (3) Plaintiff "demonstrates a possible unwillingness to do

4

what is necessary to improve her condition in any way or it may be an indication her symptoms are not as severe or limiting as she purports" [*id.*].  The ALJ found that, therefore, the "persuasiveness" of Plaintiff's "allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." [*Id.*]  The ALJ ultimately rejected a finding that Plaintiff's claimed subjective mental health-related symptoms precluded her from working, concluding that even though her "medically determinable impairments could reasonably be expected to cause" the symptoms of which she complained, her "statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record." [*Id.*]

### 1.    Plaintiff's Statements and Testimony

As noted above, this case is here following a remand of an earlier federal case.  That earlier case stemmed from an adverse September 1, 2021 decision of the Commissioner.  [AR 12-23.]  At the August 5, 2021 hearing which preceded that 2021 decision, Plaintiff testified[2] that she had never worked due to her "crippl[ing]"

---

[2]    The Court discusses herein the relevant statements/testimony by Plaintiff and medical records that predate the most recently-set May 5, 2000 onset date.  Plaintiff has been seeking social security benefits since July 2013, and has claimed to be disabled since 2009.  [AR 94.]  The amended May 5, 2000 onset date is an artificially set date tied to her most recent SSI application; it bears no relation to the date when Plaintiff actually began suffering from her mental health impairments and her related alleged subjective symptoms at issue here (as the medical record and prior Commissioner decisions show).  As the first issue in this case involves only Plaintiff's credibility with respect to her subjective symptom testimony, statements she has made and the existing medical record prior to this amended onset date are relevant to the question of her credibility, as they provide context for, and demonstrate consistency in, her assertions over time, particularly in light of the fact (as discussed *infra*) that the ALJ chose to rely solely on a few medical reports made post-amended onset date as a basis for finding Plaintiff not credible.  As this case involves mental impairments alleged to have existed for at least 15 years or more and the related symptoms Plaintiff claims to suffer from, pre-onset evidence is probative at the least to her credibility on the subjective symptoms issue.

5

mental illness. [AR 79.] She testified that she had trouble leaving her room for fear a catastrophic event would occur, had trouble being around people (even those she knew), and that her thoughts would get in the way of her ability to concentrate or focus. [AR 80.] On a normal day, she just stayed in her room and tried to read, although her anxiety would get in the way of doing so. [AR 81.] Plaintiff was not sure if her medications helped but hoped that they did. [AR 82.] Her thoughts and worries about something happening would get so loud in her head that to quiet them, she would mutilate herself. [AR 83-84.]

In her May 2022 Disability Report, Plaintiff listed the following conditions as limiting her ability to work: OCD; personality disorder; depression, panic attacks; insomnia; anxiety; and suicidal thoughts. [AR 289.] In a June 2022 Function Report, Plaintiff stated that she could not work because of anxiety, fear, racing thoughts, little to no concentration, suicidal thoughts, OCD, trouble sleeping, self harm, and isolation. Plaintiff also stated that: she did not "do well around others" due to her anxiety; she was extremely slow at completing tasks; she did not spend time with others in social activities because she was afraid of other people and what they thought of her; her anxiety and borderline personality disorder made completing tasks, concentrating, understanding and following instructions, and getting along with others "extremely difficult or nearly impossible"; she did not feel safe with authority figures; she dealt with stress terribly and "freak[ed] out" when there was a change in routine; her personality disorder caused random mood swings and a fear of being around others; and trivial comments would cause her to have suicidal thoughts and to self harm using a knife on her arms and upper legs, which was her way of dealing with stress, trauma, and anxiety. [AR 300-01, 304-07.]

At the February 27, 2024 hearing before the Decision issued, Plaintiff testified again that her mental health problems keep her from working. [AR 766.] Her problems with concentrating make it hard for her to read a book and understand it. [AR 767.] She also testified that she has problems being around people and gets

scared and panics and hyperventilates, because she is always afraid about what they were thinking about her or would do to her.  She often has panic attacks that last around a half hour in these situations.  [AR 767-68.]  Most days, she does not want to get out of bed and loses her will to live.  [AR 769.]

### 2.    The Medical Record

There is a substantial amount of medical evidence in the record that bears on the effects of Plaintiff's mental impairments but which predates her amended onset date.  For example, 2012, 2013, and 2014 Progress Notes and Psychiatric Assessments from the Riverside County Department of Mental Health note that Plaintiff:  had ongoing anxiety, OCD, flashbacks/vivid memories, suicidal ideation, and depression despite medication changes; was anxious and depressed, had a blunted affect, and had obsessions and preoccupations; was distant and had poor eye contact; had feelings of worthlessness, irritability, excessive anxiety, and a fear of losing control; engaged in excessive hand washing due to a fear of contamination; and had a phobic fear of going outside because she could get hit by a car or have a tree fall on her.  [AR 362-66, 369, 372-73, 375, 380-84.]

In April 2015, Dr. Brauer Trammel, Plaintiff's treating psychiatrist, noted Plaintiff reported that, in general, her psychiatric medication had not been effective, and he increased the dosage on two of her medications.  [AR 390, 392.]  On July 29, 2015, Dr. Trammel found that Plaintiff's memory and judgment were impaired, and he found evidence of, *inter alia*, confusion, depression, anxiety, compulsive behaviors, self harm, suicidal ideation, and isolation.  He opined that Plaintiff: lacked the abilities to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, and adapt to new or stressful situations; could not interact appropriately with strangers, co-workers, and supervisory authority; and could not complete a 40-hour work week without decompensating.  [AR 359.]  Dr. Trammel noted that despite numerous prescription trials, Plaintiff continued to have

a limited ability to tolerate much more than staying in her room and that it would be difficult for her to maintain any level of work.  [*Id.*]  On September 1, 2015, Plaintiff reported to another treatment provider that even with her antidepression medications, she had depressive moods every day.  [AR 394.]

After an April 6, 2016 assessment, Dr. Trammel reported that Plaintiff "is interested in continuing to modify her medication regimen in search of medication that may work better for her symptoms."  [AR 398; *see also* AR 401 (Plaintiff agreed with the psychiatrist's recommendation to change her medication recommendation).]  After a May 4, 2016 visit, Dr. Trammel reported that evidence of confusion, depression, anxiety, compulsive behaviors, self harm, suicidal ideation, and isolation persisted, that Plaintiff continued to have depression, anxiety, severe obsessions and compulsions, and that she continued to lack the abilities to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, and adapt to new or stressful situations, and could not interact appropriately with strangers, co-workers, and supervisory authority.  He again found that Plaintiff could not complete a 40-hour work week without decompensating.  [AR 360.]

In an April 18, 2017 assessment, Dr. Trammel noted that Plaintiff had requested help with continuing treatment and felt able to engage with a plan of care. [AR 413.]  Plaintiff agreed to an increase in the dosages of two of her psychiatric medications.  [AR 418.]  In January 3, February 14, March 21, May 23, and July 18, 2018 assessments, Dr. Trammell noted that Plaintiff reported that she felt the same and listed as her baseline mood swings, suicidal ideation, cutting, anxiety and compulsions of 4-5 days a week and that she continued to wash her hands excessively.  [AR 613-14, 615-16, 617, 619, 622.]  In the July assessment, Dr. Trammell noted that Plaintiff continued to wash her hands frequently and isolate in her room  [AR 622.]  Dr. Trammell reported similarly on August 29, October 17, November 14, and December 12, 2018, and January 9, February 20, April 3, May 15, June 26, and August 21, 2019, including Plaintiff's continued excessive and

aggressive hand washing, isolation in her room, and report of no improvement with new medication.  [AR 628, 633-34, 637-40, 642-45, 647-50, 652-53, 655-56.]

On September 6, 2019, Plaintiff began seeing Eric Ontiveros, LCSW. Plaintiff appeared anxious and restless, and she avoided eye contact.  When Ontiveros suggested therapy, Plaintiff appeared apprehensive, advised that she had prior negative experiences with therapy when she was an adolescent, and expressed concern that she would be hospitalized.  After further discussion, Plaintiff said that she wanted to try therapy with Ontiveros.  [AR 660.]  On September 18, 2019, Plaintiff again appeared anxious and restless, and she avoided eye contact.  [AR 661.]  On October 2 and 9, 2019,  Ontiveros characterized Plaintiff's affect as dysphoric and that she described her mood as depressed, noted that Plaintiff attributed her excessive hand washing to past trauma because she "can't get clean," and that "every day is a battle" to keep from cutting herself, with the last self-injury event on September 26, 2019.  [AR 661-62.]  On October 23, 2019, Ontiveros observed that Plaintiff had a dysphoric effect and impaired judgment/insight and avoided eye contact, and she indicated that she did not wish to continue therapy with him because she felt it was a "waste of time."  [AR 666.]  That same day, Plaintiff saw Dr. Trammel and told him she felt she had wasted her therapist's time and had not done anything to make things better.  [AR 664.]  On December 11, 2019, Plaintiff reported to Dr. Trammel that she continued to have anxiety, compulsions, and obsessions and spent most of her time in her room.  [AR 667.]

On January 15, 2020, Dr. Trammel reported that Plaintiff's eye contact was poor and her affect was restricted and that she reported spending all her time in her room and continued anxiety and compulsions.  [AR 670.]  On February 26, 2020, Plaintiff told Dr. Trammel that she wanted to retry taking Topamax.  [AR 672.]  On May 27, 2020, Petitioner reported to another psychiatrist (Dr. Jeong Kim) that she still was depressed, had anxiety, obsessions, and compulsive behaviors, was washing her hands a lot and counting repeatedly, and had cut herself as recently as

the prior month.  [AR 675.]  On July 22, 2020, Plaintiff reported the same symptoms to Dr. Kim and noted that she occasionally has suicidal ideation, especially when things are not going as she wanted or expected.  [AR 718.]  On October 1, 2020, Dr. Kim noted that Plaintiff reported the same symptoms and he observed that she exhibited rambling thoughts and a depressed mood.  [AR 734-35.]

On March 4, 2021, Plaintiff told Dr. Kim she had depression, anxiety and obsessive thoughts, and did not mind what might happen to her even if it was death, although denied an active suicidal plan.  Dr. Kim suggested counseling or therapy but Plaintiff refused.  [AR 725.]  On April 27, 2021, Plaintiff reported to Dr. Kim that she was depressed, and her thought process was described as tangential and rambling.  [AR 739-40.]  In June 25 and August 27, 2021 visits, Plaintiff reported to Dr. Kim that she experienced mood swings but was "fine" or "ok."  [AR 1042, 1044.]  On October 21, 2021, Plaintiff told Dr. Kim that she has "worst case scenario" thoughts which led to panic attacks.  [AR 1040.]  In subsequent visits with Dr. Kim from late 2021 continuing into 2022, Plaintiff repeatedly told him she was "fine."  [AR 1034, 1036, 1038.]  On August 45, 2022, Dr. Kim described Plaintiff as "distant or indifferent" and not very interested in improvement, noting she answered questions with simple yes or no responses.  [AR 1032.]  On November 1, 2022, Plaintiff told Dr. Kim that the reason she always said she was the "same" is because she remained depressed and could not remember not being depressed.  [AR 1030.]

On January 30, 2023, Plaintiff reported to Dr. Kim that she remained depressed and that nothing was working.  [AR 1027.]  In a November 27, 2023 behavioral assessment, Plaintiff reported constantly obsessing over little things, suicidal ideation with no plan or intent, feelings of hopelessness and worthlessness, daily crying, daily irritability, frequent self-harm (including cutting herself the prior month), which she does to "not feel," and racing and panicky thoughts.  [AR 1472, 1475.]

### 3. Applicable Legal Principles

As Respondent points out, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). When a claimant has established an impairment and testifies about her related subjective medical symptoms, an ALJ must evaluate the testimony through two steps.

First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

Second, if the claimant meets the first step's standard and there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and internal quotation marks omitted). Of course, an ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). Nonetheless, when an ALJ rejects a claimant's testimony, the ALJ must "specify which testimony [she] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter*, 806 F.3d at 488-89.

At the second step, general or implicit findings on credibility will not suffice; the ALJ must show her work. *Smartt*, 53 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "[T]he ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '*which* testimony [the ALJ] found not credible' and explaining '*which* evidence contradicted that testimony.'" *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting *Brown-Hunter, supra*); *see also Lambert v.*

11

*Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (quoting *Brown-Hunter*, 806 F.3d at 494) (emphasis in original)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The sufficiency of the ALJ's explanation at this step should be judged in light of its purpose – ensuring that this Court's review is "meaningful." *Brown-Hunter*, 806 F.3d at 489. That is, the explanation must be "'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* at 493 (citation omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

### 4.    Analysis

The ALJ reviewed Plaintiff's written statement and oral testimony and noted that Plaintiff claimed her mental health impairments caused the following symptoms:  "depression, anxiety, panic attacks, compulsive behaviors, personality disorder, problems following understanding [*sic*] and following instructions, difficulty being around and interacting with others, difficulty and very slow with completing tasks, racing thoughts, insomnia, suicidal thoughts, fearful, difficulty concentrating, self-harm behaviors, and isolates herself."  [AR 750.]  The ALJ further noted that Plaintiff claimed these symptoms limited her ability to work.  [*Id.*]  The Court agrees that the record shows that Plaintiff has reported all of the above symptoms, although a review of the record as a whole paints a more full picture of

their asserted negative affect on her ability to work.  For example, Plaintiff
repeatedly reported that she was phobic about going outside because she had
catastrophic thoughts, would mutilate herself to quell negative thoughts and/or in
response to trivial comments by others, would have panic attacks when around other
people and was paranoid about what they were thinking of her, and feels unsafe
around authority figures.  These reported symptoms, if found credible, obviously
would impact Plaintiff's ability to work substantially.

The ALJ, however, did not find Plaintiff's reports of her symptoms to be fully
credible.  Although not finding any malingering and conceding that Plaintiff's
medically determinable impairments could be expected to cause the symptoms she
alleges, the ALJ rejected Plaintiff's descriptions of the full nature of her symptoms
and their effects, opining that Plaintiff's "statements concerning the intensity,
persistence and limiting effects of these symptoms are not entirely consistent with
the medical evidence and other evidence in the record for the reasons explained in
this decision."  [AR 751.]  This same boilerplate "introductory remark" is "routinely
included" in ALJ decisions and does not discharge the ALJ's duty of providing an
explanation.  *Treichler*, 775 F.3d at 1103.  The ALJ stated the following three
grounds as her explanation for finding Plaintiff's statements about her subjective
symptoms not credible:

**First**, the ALJ opined that if Plaintiff actually were totally disabled, "one
would expect" her to have received some other type of treatment, although the ALJ
does not identify what that additional expected medical treatment would or should
have been in the ALJ's view.  The ALJ characterized Plaintiff's treatment – well
over a decade of multiple psychotropic medications with frequent meetings with
psychiatrists or other medical personnel – as "routine and conservative" and then
opined that Plaintiff's symptoms are not as severe as she alleges or else she would
have received unspecified "more aggressive treatment or use of other treatment
modalities."  [AR 750.]

13

As a threshold matter, the ALJ's opinion that Plaintiff should have received some additional "aggressive" treatment if she actually has the degree of impairment she claims improperly substitutes the ALJ's own lay opinion for that of Plaintiff's treating medical professionals.  The ALJ does not dispute that, over the years, Plaintiff has reported to her treating professionals the subjective symptoms she claims render her unable to work.  Indeed, the record amply supports the conclusion that Plaintiff has reported these same symptoms consistently and repeatedly since at least 2012 until now.  Rather, the ALJ decided that if a patient has such symptoms, she would or should have received a treatment course that was different and more "aggressive" in some unspecified manner than was prescribed for Plaintiff by her treating professionals.   The ALJ was not permitted to render her own medical opinion regarding medical findings and examination results and to then conclude that some other treatment would have been appropriate for a patient with the mental illness conditions from which Plaintiff suffers and who reports the symptoms she has mentioned and that her treating professionals have observed.  *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own lay medical assessment beyond that demonstrated by the record); *Winters v. Barnhart*, No. C 02-5171 SI, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert."); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); *Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (an "ALJ may not substitute his own layman's opinion for the findings and opinion of a physician").  Thus, the ALJ's opinion – that Plaintiff cannot be disabled, because if she was, she should have been treated more aggressively for the symptoms she reports – is not convincing.

As the record shows, Plaintiff has been receiving psychiatric treatment for her mental health conditions since at least 2012 or earlier, which has consisted of a

14

variety of psychotropic medications and psychiatric consultations, sometimes every month and sometimes every two to three months. While some of her treating professionals have, on occasion, suggested individual or group therapy, and Plaintiff has participated in individual therapy, she also has explained why she does not wish to do so (as discussed *infra*), and none of her treating personnel have indicated that she cannot be adequately treated absent such therapy. More importantly, none of them have indicated that Plaintiff needs "aggressive treatment" as the ALJ opines.

To the extent the ALJ suggests [AR 752] that Plaintiff's subjective symptom testimony should be discounted (or that she cannot be disabled) because she had never been hospitalized due to her psychiatric symptoms, or received emergency mental health treatment, such an inference has been rejected by the Ninth Circuit. *See Schiaffino v. Saul*, 799 Fed. App'x 473, 476 (9th Cir. Jan. 9, 2020) ("Hospitalization is not required to show that mental health conditions such as PTSD, OCD, and anxiety are disabling from employment."); *see also Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) (holding that an ALJ's rejection of a treating psychiatrist's opinion for lack of psychiatric hospitalization was not specific and legitimate, because "[a] claimant may suffer from mental health impairments that prevent him from working but do not require psychiatric hospitalization"); *Matthews v. Astrue*, No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012) (finding an ALJ's stated reason for discounting the claimant's credibility – that she had received "only" conservative treatment – not clear and convincing when the claimant had been taking psychotropic medication and receiving outpatient care, observing that the claimant "does not have to undergo inpatient hospitalization to be disabled").

To the extent that the ALJ suggests that it is not possible for a claimant to have the symptoms Plaintiff describes when treatment is limited to psychotropic medications coupled with psychiatric appointments and consultations, because this course of treatment is too "conservative," this too is error. The medical records

show that Plaintiff had been prescribed and taken antipsychotics (such as Abilify, Latuda, and Seroquel), antidepressants (such as Cymbalta, Effexor, Fluvoxamine, Paxil, Prozac, Wellbutrin, and Zoloft), and anti-seizure or sedative medications (including Buspar, Lamictral, and Topamax), and she has been taking multiple psychotropic medications at a time since at least 2012.  [*See, e.g.,* AR 291, 323, 358, 363-64, 372, 374, 377, 380, 382, 392, 401, 414, 424, 479, 496, 540, 548, 556, 560, 580, 590, 595, 599, 605, 611, 614, 616, 619, 623, 629, 632-34, 638, 640, 643, 645, 648, 650-51, 665, 668, 671, 673, 676-84, 686-88, 719, 728, 731-32, and 958-1017.] To parrot another decision, "[i]t is entirely unclear to the court how treatment with such medications could be characterized as conservative." *Rice v. Colvin*, No. 2:15–cv–1763 DB, 2017 WL 85815, at *5 (E.D. Cal. Jan. 10, 2017); *see also Carden v. Colvin*, No. CV 13–3856–E, 2014 WL 839111, at *3 (C.D. Cal. March 4, 2014) (collecting cases finding that mental health treatment is not "conservative" "within the meaning of social security jurisprudence" when such treatment involved medications of the sort Plaintiff was prescribed here); *Baker v. Astrue*, No. ED CV 09–1078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment.").

Citing a lack of treatment in the case of mental impairments is disfavored. *See Regennitter v. Commissioner of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999).  Plaintiff's failure to pursue more aggressive treatment than that which she was prescribed and receiving and had been compliant with for many years is not a sufficiently clear and convincing reason to support the ALJ's adverse credibility finding.  The ALJ offers no suggestion why the psychiatric treatment Plaintiff received was inadequate or supports the finding that she is not credible. The ALJ's reliance on simply conclusorily labeling Plaintiff's treatment regimen over the years as "conservative" is not enough to persuasively explain why its nature rendered Plaintiff's complaints of disabling symptoms arising from her documented

16

mental illnesses not believable.  The ALJ's first reason for her adverse credibility finding was not specific, clear, or convincing.

**Second**, the ALJ opined that the treatment Plaintiff received – which the ALJ already had deemed wanting and insufficient *if* Plaintiff actually had the symptoms she claims, as noted above – in fact, was "successful" in controlling Plaintiff's reported symptoms.  [AR 751.][3]  The ALJ stated that Plaintiff "consistently" reported that her medications were "working" and "helping her," and that she consistently refused any adjustments to her medication regimen.  [AR 750-51.]  The ALJ's unduly rosy characterization of the record is not accurate.

The ALJ cites to only two documents to support her conclusion.  The ALJ first references a March 2, 2021 assessment report by Dr. Kim, which states that Plaintiff still has her symptoms but they have "attenuated mildly with meds."  [AR 752-53, citing AR 730.]  The ALJ also references Dr. Kim's January 30, 2023 progress note, asserting that the report says that Plaintiff "repeats the same story that she is always depressed and nothing was working" but that at the *same* appointment, she "reported that her medications are helping her but that her symptoms were the same and/or she does not notice much difference on medications but always wanted to continue medications and or that she indicated her medication were working, she refused any medication adjustments, and she wanted to continue her current medication regimen."  [AR 753, citing AR 1492.]

Dr. Kim's unexplained note that Plaintiff's symptoms have "attenuated mildly" is vague at best, and it is unclear on what he bases that statement.  In any event, even if Plaintiff's symptoms had "attenuated mildly" as of March 2021, this does not mean that her consistent descriptions of the extent and disabling nature of

---

[3]     There plainly is in inconsistency in finding, on the one hand, that symptoms of the sort Plaintiff alleges cannot adequately be treated by the "conservative" treatment she received and then, on the other hand, finding that this same "conservative" treatment actually was successful in treating those same alleged symptoms.

her subjective symptoms spanning over ten years prior and during the years

thereafter are not credible, particularly when the bulk of her statements indicate that

her medications are not controlling her symptoms (*see infra*).  A mild attenuation in

disabling symptoms at one point in time is not the same thing as a control of

symptoms so effective that it renders them nondisabling.  As the Ninth Circuit has

explained:

> As we have emphasized while discussing mental health
> issues, it is error to reject a claimant's testimony merely
> because symptoms wax and wane in the course of
> treatment.  Cycles of improvement and debilitating
> symptoms are a common occurrence, and in such
> circumstances it is error for an ALJ to pick out a few
> isolated instances of improvement over a period of
> months or years and to treat them as a basis for
> concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.  *See also Holohan v. Massanari*, 246 F.3d 1195, 1205

(9th Cir. 2001) ("[The treating physician's] statements must be read in context of the

overall diagnostic picture he draws. That a person who suffers from severe panic

attacks, anxiety, and depression makes some improvement does not mean that the

person's impairments no longer seriously affect her ability to function in a

workplace."); *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th

Cir. 2008) ("Nor are the references in [a doctor's] notes that [the claimant's] anxiety

and depression were 'improving' sufficient to undermine the repeated diagnosis of

those conditions, or [another doctor's] more detailed report."); *cf. Ghanim v. Colvin*,

763 F.3d 1154, 1161-62 (9th Cir. 2014) (observing that when notes recorded "some

improved mood and energy level" but also "consistently reflect that [the claimant]

continued to experience severe symptoms, including ongoing depression and

auditory hallucinations, difficulty sleeping, nightmares, and memory loss," they

were not internally inconsistent, because "'occasional symptom-free periods are not

inconsistent with disability'") (citation omitted).

18

In addition, the ALJ's characterization of the January 30, 2023 progress report is perplexing.  While Dr. Kim did note that Plaintiff "repeats the same story that she is always depressed and nothing was working," he also noted that at their last visit, Plaintiff reported that she was not sure that Cymbalta was working and, so, it was tapered off.  [AR 1492.]  Critically, Dr. Kim did *not* note any further reports by Plaintiff at that appointment akin to what the ALJ has asserted was reported.  Rather, Dr. Kim noted that at numerous *prior* appointments:  when they reviewed her prior medication history, Plaintiff stated that she had tried numerous mood stabilizers and "she doesn't recall any med was working and that is the reason of changing meds for last 10 years"; "she continuously has reported she hasn't been improved [by her medications] or changes the sx at all" and so Dr. Kim suggested she taper off her medications; Plaintiff repeatedly stated that she wanted to continue her medications; and when asked if her medications improve her symptoms, Plaintiff answered, "I guess."  [AR 1492-93.]

In short, the portions of the medical record on which the ALJ relies to support her conclusion that Plaintiff's treatment has "successfully" controlled her symptoms do not actually support that conclusion.  Moreover, the remainder of the record not only refutes that conclusion but plainly refutes the ALJ's representation that Plaintiff "consistently reported that her medications helped her and consistently refused to adjust her medication regimen."[4]

On January 25, 2012, Plaintiff reported that a switch in her medication (to

_____

[4]      Defendant's unexplicated citations to AR 736-40, 1022-27, 1030-58, and 1487-77 also do not support the conclusion that, as Defendant puts it, Plaintiff refused to accept medication changes.  [Def. Brief at 5.]  In fact, they show otherwise.  [*See* AR 1027 (Plaintiff had reported that Cymbalta was not working and agreed to reduce the dosage); 1030 (Plaintiff reported that her numerous medication changes over the years were because her medications were not working); 1049 (Plaintiff asked to stop taking Topamax because it gave her diarrhea).]  And as discussed above, simply relying on Dr. Kim's unexplained "attenuated mildly" reference for the proposition that "Plaintiff reported that medications were working to improve her symptoms" [Def. Brief at 5, citing AR 1487] is not convincing.

Zoloft) has not resulted in any improvement.  [AR 362.]  In April and May 2012,

Plaintiff reported that she had not experienced any improvement taking Wellbutrin.

[AR 363-34.]  Progress notes in June, August, and October 2012 and April, June and

November 2013 report that increasing Plaintiff's dosage of Wellbutrin, Zoloft, and

Anafranil and switching her to Lexapro had not helped her at all and that Paxil had

not been useful at all for her OCD and only mildly useful for her depression and

anxiety.  [AR 448-51, 454-58, 459-62, 479-80.]   In September 2012 and February

2013, Plaintiff reported that she had tried Zoloft, Celexa, and Paxil for her panic

attacks and agoraphobia and none were helpful.  [AR 427-30.]  In March 2014,

Plaintiff reported that she had not noticed any improvement in her mood or OCD

symptoms after titrating her Paxil.  [AR 380.]  In October and November 2014,

Plaintiff reported that she thought a medication change was helping.  [AR 514, 519.]

In January 2015, Plaintiff reported that her medication was helping to stabilize her

mood.  [AR 521.]  However, in April 2015, Plaintiff reported to Dr. Trammel that

her medications generally had not been effective.  [AR 390, 392.]  On April 6, 2016,

Plaintiff agreed with Dr. Trammel's recommendation to change her medication

regimen.  [AR 398, 401.]  In June, August and November 2016, Plaintiff reported

that her mood was more stabilized and that she did not notice any change in

switching from Abilify to Buspar.  [AR 564, 568, 573, 583.]  However, on April 19,

2017, Plaintiff reported to her treating psychiatrist that in general, her various

medications had not been effective.  [AR 414.]  On August 29, 2018, Plaintiff

reported that although she was taking her medications, she continued to experience

anxiety, obsessions and compulsions and to wash her hands excessively (15-20

times a day).  [AR 628.]  On November 14, 2018, Plaintiff reported that she felt the

same with her new prescription.  [AE 637.]  On April 3, 2019, Plaintiff reported that

her depression had increased and her anxiety, obsessions and compulsions had

remained the same.  [AR 647.]  On December 11, 2019, Plaintiff reported that she

takes her medications but has ongoing depression, anxiety, obsessions and

compulsions.  [AR 667.]  On February 26, 2020, Plaintiff reported that she
continued to have obsessions and compulsions and would like to restart Topamax.
[AR 672.]  On May 27, 2020, Plaintiff reported that despite taking her medications,
she still has a depressed mood, mood swings, anxiety, and compulsive behaviors.
[AR 675.]  On December 10, 2020, Plaintiff told Dr. Kim that she felt better and
wanted to stop Topamax, because it gave her diarrhea.  [AR 736.]

   The record, thus, plainly contradicts the ALJ's representation that Plaintiff
consistently has reported that her medications successfully control her symptoms
and help her and that, moreover, she consistently has refused to adjust her
medication regimen.  Rather, the record as a whole shows that, for the most part,
Plaintiff has reported that her medications do not help her, with only intermittent
periods of time in which she reports feeling mildly better although still experiencing
her symptoms.  In addition, the record does not support the ALJ's assertion that
Plaintiff has been unwilling to adjust her medication regimen and plainly shows to
the contrary.

   An ALJ's proffered reason for rejecting a claimant's credibility is not
convincing when it is based on a mischaracterization of the record or a failure to
account for the portions of the record that contradict the ALJ's desired conclusion.
*See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ may not develop
evidentiary basis of record "by not fully accounting for the context of materials or
all parts of the testimony and reports"; and finding that ALJ erred by inaccurately
paraphrasing record material and mischaracterizing statements and documents to
reach the conclusion that the claimant exaggerated symptoms); *see also Jones v.
Kijakazi*, 2022 WL 4285597, at *1 (9th Cir. Sept. 16, 2022) (finding the ALJ's
omission of important qualifying information was a mischaracterization of the
evidence); *Thelan v. Astrue*, 2007 WL 3283651, at *1 (9th Cir. Nov.7, 2007) (ALJ's
mischaracterization of the evidence required remand of administrative decision);
*Normalya T. v. Kijakazi*, No. 22-CV-02691-JST, 2023 WL 4109574, at *6 (N.D.

Cal. June 20, 2023) (finding the ALJ erred when she "mischaracterized the evidence on which she relied and otherwise selectively cited the record to portray Plaintiff's conditions as less severe than the record actually shows them to be").

The Court finds that the ALJ's selective reliance on only two reports by Dr. Kim, while at the same time mischaracterizing them and ignoring other contrary evidence of record, was error.  Accordingly, the ALJ's second reason for finding Plaintiff's subjective symptom testimony to be not credible is not convincing.

**Third**, the ALJ opined that Plaintiff likely was unwilling "to do what is necessary to improve her condition in any way," which in turn, indicates that she is overstating the severity and limiting nature of her symptoms.  The ALJ drew this conclusion based on an August 2022 progress note by Dr. Kim, in which he noted that Plaintiff was "seen through phone visits because she does not want to report her information clearly and in detail, she just briefly answers yes or no to any questions, she did not seem to be interested in treatment or improvement of her symptoms, and she is very distant and indifferent to conversation." [*See* AR 751, citing AR 1488[5].] The ALJ also cited 2021 and 2022 assessments and progress notes by Dr. Kim, asserting they showed that Plaintiff "consistently" declined her doctor's recommendations for further treatment options and other resources.  [*See* AR 752, citing AR 725, 739.]  The ALJ particularly relied on Dr. Kim's statement that he recommended Plaintiff undergo therapy or a supporting service such as peer support or family support, but that she declined.  [*Id.*]

The Court has carefully read the notes made by Dr. Kim on which the ALJ relies as well as Dr. Kim's other reports and notes contained in the record.  It is clear that Dr. Kim was critical of and/or frustrated with Plaintiff given how quickly he faulted her for various matters, as the ALJ notes.  The difference in tone and observations between Dr. Kim's notes and reports and those of Plaintiff's other

---

[5]    The ALJ cited Ex. C6F, p. 24 [located at AR 1488], which is incorrect.  The correct page number is C6F, p. 23 [located at AR 1487].

treating providers is striking, to say the least.  Be that as it may, the Court concludes that even when Dr. Kim's rather harsh assessments of Plaintiff are considered, the ALJ's proffered third reason nonetheless is not convincing, because it ignores other medical evidence of record and certain obvious flaws in Dr. Kim's criticisms of Plaintiff.

The ALJ based her finding that Plaintiff has "consistently" declined to engage in therapy based on Dr. Kim's March 4, 2021 assessment report and his April 27, 2021 progress note, in which he stated that he had suggested that Plaintiff engage in therapy, peer support, or family support, but that Plaintiff declined.  [AR 752, relying on AR 725 and 739.]  That Plaintiff twice declined a therapy recommendation over the course of two months hardly demonstrates a consistent refusal during the course of her claimed mental health impairments.  The record shows that on March 26, 2014, Plaintiff asked for individual therapy and a referral was made.  [AR 492.]  On April 23, 2014, Plaintiff reported that she "saw a counselor last week."  [AR 496.]  In May, August, and September 2014, Plaintiff reported that she had not been back to see the counselor "because" she had been having trouble getting a ride.  [AR 502, 510, 512.]  On February 1, 2017, Plaintiff reported that she "used to get therapy at multiple places."  [AR 408.]  On September 6, 2019, after LCSW Ontiveros discussed behavioral therapy and its benefits, Plaintiff was apprehensive about it, noting that she had prior negative experiences with therapy as an adolescent and was afraid of being hospitalized, but said she would try therapy.  [AR 660.]  Thereafter, Plaintiff participated in four individual therapy sessions in September and October 2019, before concluding her sessions. [AR 661-63, 666.]  While Plaintiff's participation in therapy has not been extensive, she has not "consistently" refused to do so as the ALJ asserted, and thus, this reason proffered by the ALJ is not convincing.

The inference drawn by the ALJ and apparently by Dr. Kim – that Plaintiff's failure to agree to engage in therapy or family or peer support means that she is

lying about her symptoms – is particularly unwarranted given the nature of
Plaintiff's illness (including her fears of being around other people she does not
know, her concerns that they are judging and saying negative things about her, and
her related panic attacks) and her documented longstanding reports that her
problems may stem, at least in part, from a very troubled family history.  [*See, e.g.,*
AR 375 (Plaintiff was sexually abused by mother's boyfriends); 380 (abandonment
by drug addicted mother and non-involved father with physical, verbal, and possible
sexual abuse leading to system onset in early teens); 596 (noting Plaintiff's
bitterness, anger, and resentment towards her parents, who she feels abandoned her);
649 (Plaintiff's father was staying at her grandmother's house, which is a "trigger"
for Plaintiff); 660 (reports living with her father who is a "walking trigger"); 662
(Plaintiff reported seeing domestic violence between her mother and her boyfriends,
noted how "selfish" her father is, and noted her belief that something happened to
her as a child but she cannot remember it); 663 (Plaintiff noted she has "so much
hate" for her parents); 725 (Plaintiff reports having been sexually molested and lives
with her grandmother, who does not allow her to go out because she is "slow"); and
739 (Plaintiff's grandmother does not allow her to do anything or go outside).]
Faulting Plaintiff for declining to engage in family support or peer support under
these circumstances was unreasonable in the Court's view, and unsupported by
substantial evidence as a legal matter.  Finding Plaintiff not credible for declining to
engage in additional treatment modalities that her disease and symptoms may
prevent her from engaging in – particularly when there is no medical evidence that
these additional modalities actually would have helped her rather than exacerbated
her symptoms – is not a justifiable basis for rejecting her subjective symptom
testimony.

      The Court also finds troubling that the ALJ accepted, without question, Dr.
Kim's assertion that Plaintiff – because she declined to participate in in-person visits
and relied on telephonic visits – was attempting to be deceptive and to not provide

1    accurate or detailed information.  It is true, as Dr Kim noted and as the record

2    shows, that Plaintiff used to participate in in-person visits at times up through 2019.

3    Neither the ALJ nor Dr. Kim, however, acknowledge the possible effect of the

4    Covid pandemic, especially on a patient who has obsessions and compulsions

5    related to cleanliness and germs and obsessively washes her hands.  While the Court

6    is not trying to play after-the-fact doctor here, it is odd that Dr. Kim's notes do not

7    mention the Covid pandemic at all, including how it might relate to Plaintiff's

8    symptoms and instead, just immediately jump to the conclusion that Plaintiff seeks

9    to be deceptive by participating in telephonic visits rather than in-person visits.  His

10   – and the ALJ's – inference of deceptiveness is particularly odd given that Plaintiff

11   explained to him that her grandmother doesn't allow her to go out and she lacks

12   transportation.  [AR 1487.]  While Dr. Kim discounted this explanation because

13   Plaintiff declined his suggestion that she obtain a bus card [*id.*], Plaintiff's history of

14   panic attacks being around other people and obsessive and compulsive behavior,

15   rather than deceptiveness, could have explained her unwillingness to ride on a bus

16   during the Covid pandemic.

17          "[I]n assessing a claimant's credibility, the ALJ may properly rely on

18   unexplained or inadequately explained failure to seek treatment."  *Molina v. Astrue*,

19   674 F.3d 1104, 1113 (9th Cir. 2012).  Here, Plaintiff's failure to participate in in-

20   person visits rather than telephonic visits came with an explanation provided by

21   Plaintiff, but Dr. Kim, and the ALJ, rejected it for reasons that are not persuasive, or

22   at least, appear to have failed entirely to take into account the effects of both

23   Plaintiff's disease and symptoms and the Covid pandemic.  Similarly, the readiness

24   of both Dr. Kim and the ALJ to believe that Plaintiff is untruthful because she

25   declined to participate in family or peer support seems unwarranted given Plaintiff's

26   family history and her history of panic attacks when being around other people she

27   does not know.  Both Dr. Kim and the ALJ appear all too willing to infer that

28   Plaintiff is lying based on reasoning that is, put charitably, tenuous at best.

25

As the Ninth Circuit has observed, "we have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter*, 166 F.3d at 1299-1300 (citation omitted).  As the Ninth Circuit further has observed, "we do not punish the mentally ill" for deviating from treatment "when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison,* 759 F.3d at 1018 n.24.  Whatever Plaintiff's reasons may have been in 2021 and 2022 for the terse answers she gave to Dr. Kim, for declining to conduct her visits in-person rather than by telephone, and for declining to participate in other forms of treatment, the record amply supports a finding that her behavior was the product of her illnesses and their symptoms, rather than simply assuming that this behavior proves she is lying about them.  Given Plaintiff's medical history described above, it is equally – if not more – plausible that Plaintiff's asserted unwillingness to be forthcoming in full and/or to try alternative treatments in 2021 and 2022 may have been the direct result of her mental health issues, not evidence that she is not credible with respect to her descriptions of her symptoms.

For the foregoing reasons, the Court concludes that the ALJ's third reason for discrediting Plaintiff's statements and testimony about her symptoms is not convincing.

The Court has found that each of the stated reasons proffered by the ALJ for rejecting Plaintiff's statements and testimony about the intensity, persistence, and limiting effects of her symptoms are suffused with error.  Moreover,  there is a further error here.  As noted earlier, an ALJ "must identify the testimony that [is being discounted], and *specify* 'what evidence undermines the claimant's complaints.'" *Treichler.*, 775 F.3d at 1103 (9th Cir. 2014) (citation omitted) (emphasis added); *Brown-Hunter*, 806 F.3d at 493.  Here, the ALJ did not

adequately tie any of Plaintiff's subjective symptom testimony to the record evidence that allegedly undermined it. While the ALJ concluded that Plaintiff's statements about her symptoms are "not entirely consistent with the medical evidence and other evidence in the record," the ALJ failed to identify *which* of Plaintiff's asserted symptoms are contradicted by *which* evidence and why. The ALJ's conclusory assertion did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. *Brown-Hunter*, 806 F.3d at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC determination and summarized the evidence supporting that determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony"). Thus, the ALJ failed to provide specific, clear, and convincing reasons for her conclusion that the medical and other evidence of record contradicts Plaintiff's subjective symptom testimony and statements.

The Court notes that Defendant argues that any errors made by the ALJ are harmless. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citations omitted). But where, as here, the ALJ fails to state legally sufficient reasons for discounting a claimant's subjective complaints, a court ordinarily cannot properly affirm the administrative decision. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006). The Court is unable to conclude that the ALJ's errors in evaluating Plaintiff's subjective complaints were "harmless" or "inconsequential to the ultimate non-disability determination." *Brown-Hunter*, 806

F.3d at 492.  Thus, remand is warranted on this issue.

**B.     The Court Declines to Address Plaintiff's Remaining Issues**

Having found that remand is warranted as discussed above, the Court declines to address Plaintiff's remaining issues.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

**VI.  REMAND FOR FURTHER PROCEEDINGS**

Given the record reviewed by the Court in this case, the Court finds it highly unlikely that any reasonable ALJ would discredit Plaintiff's testimony yet again on remand of this case.  However, because further administrative proceedings could *possibly* remedy the ALJ's errors, remand is nevertheless appropriate.  *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

The Court believes that review by a new ALJ is appropriate but will not order that the case be transferred.  In any case, if the reviewing ALJ again determines that an award of benefits is not appropriate, then he or she must address each and every one of the citations to the record contained in the instant remand order in order to

28

justify another determination that Plaintiff's testimony should be discredited.  The ALJ is also directed to address the remaining issues raised by Plaintiff here that the Court did not address because it remands the case based on the first issue alone.

**VII. CONCLUSION**

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED:  April 16, 2025

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

29